IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMERA LYNN JACKSON,

    Plaintiff,

vs.                             Case No. 12-4149-JTM

CAROLYN COLVIN, Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Tamera Lynn Jackson has applied for Social Security disability and supplemental security income benefits. Her application was denied by Administrative Law Judge (ALJ) Christina Young Mein on June 13, 2012, a decision affirmed by the Appeals Council on November 1, 2012. There are two allegations of error by Jackson. First, she contends that the ALJ's decision is not supported by substantial evidence. Second, she argues that the vocational evidence supports a finding of disability.

Plaintiff-claimant Jackson was born on September 26, 1960. She has stated that she became disabled beginning June 16, 2009. She has a high school education, and has previously worked as a bindery worker, a certified nurse assistant, and a certified medication aide. She has cited a variety of ailments, including depression and lower back

injury. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 13-29), Jackson's brief (Dkt. 12, at 1-4), and set forth seriatim in the argument section of the Commissioner's response (Dkt. 17, at 5-15).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize

the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, are grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

In the present case, the ALJ determined that Jackson suffered from severe impairments in the form of degenerative disc disease of the lumbar spine, status post lumbar fusion, degenerative changes of the cervical spine, mild degenerative changes of the left knee, mild dysfunction of the vestibular system, asthma, major depression, generalized anxiety disorder, posttraumatic stress disorder (PTSD) and a personality disorder. These impairments did not meet or exceed the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. The ALJ determined that Jackson retained the Residual Functional Capacity (RFC) to lift and carry twenty pounds occasionally, and ten pounds frequently. Jackson can stand and walk for six hours of an eight-hour day, and sit the same length of time. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. She can occasionally balance and stoop, but not kneel, crouch or crawl. She must also avoid concentrated exposure to extreme cold, beat, or vibrations, and avoid dusts, gases, fumes

odors and poorly ventilated areas. She can do simple, routine and repetitive tasks, but must avoid frequent interaction with the public and coworkers.

In the present appeal, Jackson challenges the ALJ's determination that her subjective description of her impairments lacked credibility. The ALJ found that Jackson's credibility was undermined by a variety of considerations.

As to this issue, ALJ first found that, following the May 27, 2010 back surgery by Dr. Michael Smith, Jackson's X-rays indicated a normal alignment of the disc space with only mild degenerative changes. Jackson's neurological symptoms improved, and had normal motor function, sensation and reflexes. The objective medical assessments did not support the degree of limitations asserted by Jackson. In addition, the ALJ noted that Jackson had not sought more than "minimal treatment" for the alleged neck and knee pain. (Tr. 22). Jackson also missed many physical therapy appointments. There was no ongoing treatment for her alleged neck pain. These determinations are fully supported in the record.

The ALJ also found that Jackson's subjective complaints of pain were not credible based on her reported activities of daily living. She wrote:

> As noted above, the claimant testified that she lives alone and is able to independently perform all of her activities of daily living. The claimant completed form for the agency reflecting that she was able to make her own meals, perform her own household chores and shop for her own groceries. She reported going to church two times a week.

(Tr. 23).

The plaintiff does challenge this latter conclusion, noting that the underlying evidence showed only that she attended church twice a month, rather than twice a week.

The court finds that the plaintiff has failed to demonstrate any substantial error in the decision of the ALJ. In the cited passage, the ALJ explicitly referenced her earlier findings as to Jackson's daily living activities. There, she observed:

> The claimant testified that she lives alone. She is able to drive a car and goes to medical appointments twice a week. The claimant goes to church two times a month. She testified that she watches television all day. The claimant is able to dress and bathe herself. She is also able to make her own meals, wash her dishes and do the laundry. She also cleans her apartment. However, the claimant relies on her son to do the shopping.

(Tr. 21). The court finds that the plaintiff has not demonstrated any substantial error. The ALJ accurately assessed the claimant's daily living activities, and appropriately considered those activities in the context of her credibility assessment.

The ALJ noted that Jackson's claim that she used her walker since her May, 2010 surgery was contradicted by the evidence. The ALJ correctly noted that Dr. Smith had several followup visits after the surgery, and never noted any need for a walker. Assessments made by other medical sources during the relevant time period also fail to indicate any need for a walker. These are fair assessments of the medical record. Jackson later did obtain a prescription for an assistive device — a cane, not a walker — but this was some years after the surgery.

The ALJ found additional considerations "negate the claimant's credibility." (Tr. 23). Specifically, she noted

> the record reflects that the potential for secondary gain has influenced the claimant's doctor's visits. A detailed functional capacity evaluation in August 2010 [at the Athletic & Rehabilitation Center (ARC)] was remarkable for the claimant consciously giving less than full effort. Dr. Gilbert noted that the

> claimant failed four of the five Waddell's signs for symptom magnification. The claimant's medication provider at Valeo consistently noted that the claimant was more focused on presenting her case for disability benefits, requesting repeated letters supporting her case.

(Tr. 23, record citations omitted).

The plaintiff complains that the ALJ inappropriate focused on the potential for "secondary gain," citing *Gutierrez v. Astrue*, 2013 WL 26668 (D. Or. Jan. 2, 2013). She also contends that there was nothing wrong in attempting to document her claim through Valeo, and asserts that it was error to place any reliance on the results from the test articulated in 1980 by Dr. Gordon Waddell.

The court finds that the plaintiff's arguments do not support any determination of error. In *Gutierrez*, the court simply held that "an ALJ may [not] cite secondary gain, *without more*, in order to discredit a claimant." 2013 WL 26668 at *6. In that case, the court expressly acknowledged authority holding that a claimant's credibility may be discounted where there are specific, clear, and convincing reasons for doing so. *Id.* (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

Here, the ALJ did not simply invoke the idea of secondary gain without more. Rather, as a part of a long and considered opinion, she determined that Jackson lacked credibility in numerous respects. Further, the concern for secondary gain did not originate with the ALJ. Rather, as reflected in the evidence from the medical record, Jackson's efforts to gain documentary support for her claim were unusual and persistent. It was the independent assessment of the employees of health care providers that Jackson seemed far

more focused on supporting her claim for benefits than obtaining any medical improvement.

The plaintiff asserts that the "the use of the so-called Waddell's Tests or Signs has been discredited by Dr. Waddell himself!," citing a 1998 article co-authored by Waddell and Dr. Chris Main (Ph.D.). 23 SPINE, No. 21, pp. 2367-2371. But a review of the article does not indicate that the considerations associated with Waddell's 1980 article are by themselves invalid. To the contrary, the cited 1998 article recognized that "[b]ehavioral signs are suggestive of a 'nonorganic' component in the patient's overall presentation." Id. at 2370. The cited article urged caution in the use of results from the test, which should "not be taken as definitive" by themselves, and "cannot be considered in isolation." *Id.* That is, results "are not *on their own* a test of credibility or faking." *Id*. at 2367 (emphasis added). Examiners should consider the possibility that behavior signs may indicate a learned response to pain, fear, or some other psychological response. Far from wholly disavowing use of the Waddell test, the article agrees that, if the reviewer considers and controls for such psychological responses, "it is perhaps more likely that the signs are evidence of simulation." *Id.* at 2370. This cited article appeared in 1998, and this court has otherwise found the presence of Waddell signs as appropriate evidence. *See Dannels v. Astrue*, No. 07-4122-JAR, * (D. Kan. 2008) (finding ALJ did not err in noting the presence of "multiple Waddell's signs" in the record). *See also Korum v. Astrue*, 352 Fed.Appx. 250, 254

7

(10th Cir. 2009) (rejecting argument that underling opinion was "not valid because Waddell signs are difficult to interpret and are not reliable").

Here, Dr. Gilbert determined that Jackson exhibited four of the Waddell five signs, and Jackson does not show how these specific determinations were wrong, or that the ALJ erred in including this finding as one element of his credibility assessment. The medical record contains substantial evidence to support for the conclusions of the ALJ. (Tr. 238, 381-82, 621-23, 738, 749, 767).

As to the ARC evaluation, Jackson notes that the cover letter for the report states that "The client is demonstrating full effort." But this single notation stands in direct contrast with the rest of the report, and almost certainly reflects typographic error. The report states that the assessment overall is "Invalid," and that this conclusion is "based upon consistencies and inconsistencies when interfacing grip dynamometer graphing, resistance dynamometer graphing, heart rate variations, weights achieved, and selectivity of pain reports and pain behaviors." (Tr. 621). The report expressly defines "Invalid" as "Consciously represented less than full effort." (Tr. 627). These general determinations of invalidity are documented throughout the report, as where it observes under the heading "VALIDITY OF PARTICIPATION," that the test is an "Invalid representation of capability level." (*Id.*)

Plaintiff also argues that the ALJ was wrong in determining that she had "resigned full time employment stating she no longer wanted to work on assigned nursing unit." (Tr. 23). According to Jackson, this was erroneous since the reason she could not perform the

work at her former nursing job was due to the weight lifting restriction as reflected in her RFC. She asserts that "[a]nyone who has ever seen a CNA work would know you can't work in a nursing home with such physical limitation." (Dkt. 12, at 7).

The court assumes the truth of this assertion, and the ALJ explicitly agreed that Jackson should not return to her former work. But, for purposes of the validity of the ALJ's credibility assessment, counsel's argument is contrary to the evidence. Jackson did not resign from the CNA position based upon any disability. The evidence from Jackson's former employer mentions nothing about her being forced to quit because she could no longer do the job. Rather, the employer reported that Jackson "resigned full time employment stating she no longer wanted to work on assigned nursing unit." (Tr. 180). The ALJ did not err in considering Jackson's statement as one element of her credibility assessment.

Jackson argues that the ALJ erred in ignoring the evidence from other medical providers, such as Dr. Prostic, indicating that she was likely disabled. According to the plaintiff, the ALJ simply dismissed these considerations on the grounds that those opinions addressed matters "that are reserved to the Commissioner." (Dkt. 12, at 8). An examination of the ALJ's opinion does not indicate a cursory dismissal of medical evidence. Rather, ALJ noted that the record included evidence taken in workers compensation proceedings as to whether "the claimant could not do her past work, other gainful employment or that she would be limited to desk work only. (Tr. 25). The ALJ further specified that the workers compensation opinions "are not supported by the objective evidence discussed above,

9

which fails to show any neurological impairment, nerve root impingement or significant degenerative changes." (*Id*.) This is an appropriate basis for limiting the weight of medical evidence. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007). In addition, the ALJ found that "these opinions are inconsistent with the claimant's own reported activities of daily living as described extensively above." (*Id*.) The ALJ gave significant weight to the opinions of Dr. James Warren (M.D.), Dr. Carol Adams (Psy.D.), Dr. R.E. Schulman (Ph.D), and Dr. Magdalene Kovach (Ph.D.). The court finds that the ALJ did not ignore evidence, as asserted by the plaintiff, but considered the record as a whole.

Finally, Jackson asserts that the ALJ erred in determining that she would sometimes lift 20 pounds, as this is contrary to Dr. Gilbert's determination that she should not lift more than 15 pounds. The court finds no error. The ALJ explicitly determined that Dr. Gilbert's opinion should be given little weight, as it was not based on reliable tests results. As the ALJ noted elsewhere in her opinion, the examination underlying Dr. Gilbert's assessment was invalid, given the examiner's determination that Jackson did not employ her full effort. In addition, Dr. Gilbert's assessment "is not supported by the normal EMG testing and the x-rays showing only mild degenerative changes." (Tr. 25).

The plaintiff's next major claim of error is that the ALJ should have found her disabled based upon the vocational testimony. Considering the testimony of the vocational expert, the ALJ determined that Jackson could perform light work such as mail clerk (which presents 119,960 jobs in the national economy, and 1,530 jobs in Kansas), routing clerk (687,850 jobs in the national economy, 1,073 jobs in Kansas), or electrical assembler

(180,440 jobs in the national economy, 1,910 jobs in the regional economy).

Specifically, the plaintiff contends that the ALJ erred in seeking testimony from the vocational expert about jobs which she could do with the 20 pound occasional lifting requirement. The plaintiff notes that, on cross-examination, the expert agreed that, if a 15 pound lifting requirement were used, access to work would be limited by half. (Tr. 885).

The court finds no error. As the court noted above, the RFC adopted by the ALJ was not erroneous, and accordingly the hypothetical question presented to the vocational expert was proper.

IT IS ACCORDINGLY ORDERED this 31st day of March, 2014, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE
